# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

DALE HARAPAT,

      Plaintiff,

vs.                                                                            No. CIV 08-512 JB/LFG

BENJIE VIGIL, PHIL ESQUIBEL and TONY
VALDEZ, in their individual capacities, and
RICHARD FLORES, in his official capacity,

      Defendants.

## **PRETRIAL ORDER**

This matter is before the Court pursuant to Fed.R.Civ.P. 16.  The parties conferred and

submit the following Pretrial Order.

## **I.  APPEARANCES**

Attorneys who will try the action:

For Plaintiff:

Adam S. Baker, Baker Law office, LLC, P.O. Box 3572, Taos, New Mexico 87571, (505)
231-8984

Alan Maestas and/or Kimberly Alderman, Alan Maestas Law Office, P.C., 224 Cruz Alta
Rd., Ste. 224, Taos, New Mexico 87571, (575) 737-0509

For Defendant Benjie Vigil (hereinafter "Sheriff Vigil"):

Carlos M. Quiñones, Esq., Quiñones Law Firm, 1532 B Paseo de Peralta, Santa Fe, New
Mexico 87501, (505) 992-1515

For Defendants Richard Flores, Tony Valdez and Phil Esquibel (hereinafter "State
Defendants"):
Luis Robles and Terri Beach, 500 Marquette Ave., NW, Suite 700, Albuquerque, New
Mexico  87102, (505) 242-2228 (telephone)

## II.  JURISDICTION AND RELIEF SOUGHT

**A.  Subject Matter Jurisdiction.**

    **1.  Was this action removed or transferred from another forum?**__Yes **X** No  If yes, was the action removed or transferred?

    _____ Removed    _____ Transferred    _____ Original forum

    **2.  Is subject matter jurisdiction of this Court contested?**

    __**X**__ Uncontested    _____ Contested    _____ Party contesting

    **3.  Asserted basis for jurisdiction.**

    __**X**__ Federal Question    _____ Diversity    _____ Other

    Statutory Provisions Invoked:  42 U.S.C. §§ 1983 and 1988.

**B.  Personal Jurisdiction and Venue.**

    **1. Is personal jurisdiction contested?**

    __**X**__ Uncontested    _____ Contested

    Identify the party contesting personal jurisdiction and basis for objection:

    **2. Is venue contested?**

    __**X**__ Uncontested    _____ Contested    _____ Party contesting

**C.  Are the proper parties before the Court?**

    __**X**__ Uncontested    _____ Contested

    If contested, identify each missing party or improper party and the basis for the contention:

    _____

**D.  Identify the affirmative relief sought in this action.**

    1.  Plaintiff seeks: Compensatory and punitive damages, costs, and attorneys' fees.

2.   Defendant Sheriff Vigil seeks:  Dismissal and/or judgment in Sheriff Vigil's favor concerning all of Plaintiff's claims, including any claim for punitive damages; and an award of attorney's fees and costs to the extent allowed by law.

3.   The State Defendants seek: State Defendants seek the entry of a judgment which dismisses the following claims with prejudice:  Plaintiff's Fourth Amendment and Fourteenth Amendment unlawful arrest and excessive force claims; Plaintiff's First Amendment and Fourteenth Amendment unlawful retaliation claim; Plaintiffs' First Amendment claim for injunctive relief; and Plaintiffs' state law assault, battery, false arrest, and false imprisonment claims;

### III.  BRIEF DESCRIPTION OF NATURE OF CLAIMS/DEFENSES.

**A.  Plaintiffs' claims:**

Plaintiff contends that he was peacefully protesting within the bounds of his First Amendment rights outside the District Attorney's Office in Las Vegas, New Mexico, on February 15, 2007, when he was approached by Defendants Valdez, Esquibel then Vigil who unlawfully intimidated, harassed, and ultimately arrested him without probable cause.  Rather, these Defendants acted solely to silence Plaintiff's constitutionally protected speech and actions.  On that basis, Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for unlawful arrest, excessive force, First Amendment retaliation, and malicious prosecution.  Similarly, Plaintiff asserts claims for assault, battery, false arrest, false imprisonment, and malicious abuse of process against these Defendants under state tort law.  Lastly, Plaintiff asserts a section 1983 claim for injunctive relief against Defendants Flores and Vigil to prevent them from continuing to interfere with his right to demonstrate outside the District Attorney's Office.

**B.  Defendant Sherif Vigil's defenses:** (*A defendant claiming entitlement to qualified immunity must set forth with specificity the basis of the defense.*)

Sheriff Vigil is entitled to the defense of qualified immunity on Plaintiff's claim of unlawful arrest (County I of Amended Complaint).  Even law enforcement officials who reasonably but mistakenly conclude that probable cause exists are entitled to immunity for their actions.  *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (quotation and citation omitted).  That is, Sheriff Vigil is entitled to qualified immunity if he reasonably believed there was probable cause.  *See Henry v. United States,* 361 U.S. 98, 102 (1959) ("Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed").  The standard is a flexible one, focusing on the officer's knowledge at the time of making the arrest and the totality of the circumstances.  *See, e.g., Devenpeck v. Alford,* 543 U.S. 146, 149 (2004) ("[T]he subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."); *Apodaca v. City of Albuquerque,* 443 F.3d 1286, 1289 (10th Cir. 2006) ("All that matters is whether [the officer] possessed knowledge of evidence that would provide probable cause to arrest her on *some* ground.") (emphasis in original).  However, even using the objective test discussed in *Fogarty v. City of Albuquerque,* 523 F.3d 1147, 1156 (10th Cir. 2008), to determine the probable cause question, there is ample evidence showing that Plaintiff's conduct (and that of his fellow protestors Bustos and Kittell) "could establish probable cause to believe that [they] had [committed the crimes in question]".  *Id.*

Sheriff Vigil is entitled to qualified immunity on Plaintiff's claim of excessive force, found at Count II of Plaintiff's Amended Complaint.  It is undisputed that Plaintiff and Sheriff Vigil were never involved in any altercation or "scuffle."  Plaintiff now complains that the handcuffs were too tight on his wrist and his leg was hurting.  However, it is telling that when Plaintiff was seen at the

local hospital later that afternoon, his medical records are devoid of any mention of any wrist pain and only note Plaintiff stating, "I'm healthy but I've got sinus congestion."

Assuming *arguendo* that Plaintiff's complaints of some wrist and leg pain are true, these circumstances still fall short of what is considered excessive force:

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

In sum, Plaintiff cannot offer evidence to show the use of force was excessive under the *Graham* "objective reasonableness" standard.  *See Graham*, 490 U.S. at 388.  Plaintiff also cannot show any clearly established law prohibiting the type of minimal force used by Sheriff Vigil. Accordingly, Plaintiff cannot meet his burden to overcome the qualified immunity defense on his claim of excessive force.

Sheriff Vigil is also entitled to qualified immunity on Plaintiff's claim of unlawful retaliation (County III of Amended Complaint).  Plaintiff essentially avers that Sheriff Vigil acted in concert with the District Attorney Defendants due to Plaintiff's "public opposition to the District Attorney's office."  There is no competent evidence to support this claim.

The only assertion made by Plaintiff on this issue is that once he got to the detention center, he heard Sheriff Vigil ask someone on the phone, "Tom, what should we charge them with?" Plaintiff admitted at his deposition that he was "not a hundred percent certain on this."  Plaintiff also testified that his belief that Sheriff Vigil was talking to Tom Clayton, an assistant district attorney,

rested on speculation and assumptions.  As such, the alleged statement by Sheriff Vigil does not constitute competent evidence and should be ignored by the Court.  *See* Fed.R.Evid. 401 (defining "relevant evidence").

Plaintiff admitted at his deposition that he had no knowledge of Sheriff Vigil ever talking with Tony Valdez and/or Phil Esquibel (the District Attorney Defendants) regarding the demonstrators.  Sheriff Vigil's Affidavit statement that he never had any communication of any sort with the other named Defendants in this lawsuit regarding Plaintiff prior to the underlying incident remains uncontroverted and should be accepted as an undisputed material fact.

There is simply no competent evidence that Sheriff Vigil "unlawfully retaliated" against Plaintiff.  Nor could there have been any retaliation by Sheriff Vigil against Plaintiff, when Sheriff Vigil was unaware of Plaintiff's taking part in demonstrations prior to February 15, 2007.  Plaintiff cannot meet his burden to overcome the qualified immunity defense on his claim of unlawful retaliation.

Sheriff Vigil is also entitled to qualified immunity on Plaintiff's claim of malicious prosecution (County IV of Amended Complaint).  Assuming *arguendo* that Plaintiff can meet the other three elements of a malicious prosecution claim, it is evident that Plaintiff has no evidence of malice on the part of Sheriff Vigil.  In *Wilkins v. DeReyes,* 528 F.3d 790, 799-801 (10th Cir. 2008), the Tenth Circuit agreed with the trial court that there were fact questions as to malice, based upon the officers' alleged fabrication of evidence to arrest and prosecute the Plaintiff, including acting recklessly or intentionally in coercing false statements.  In such circumstances, the Court noted, law enforcement officers "are not entitled to a qualified immunity defense based on a reasonable mistake."  *Id.* at 801.  Qualified immunity "operates to grant officers immunity for reasonable mistakes as to the legality of their actions."  *Saucier v. Katz,* 533 U.S. 194, 206 (2001).  Nothing

Sheriff Vigil is alleged to have done comes remotely close to the actions of the officers in *Wilkins*. In the instant case, there is no evidence of any malice on the part of Sheriff Vigil related to the filing of charges against Plaintiff.  In the absence of any malice, Plaintiff's malicious prosecution claim fails and Sheriff Vigil is entitled to qualified immunity.

To the extent that Plaintiff makes a claim that Sheriff Vigil violated his First Amendment rights, he has never made a claim for violation of the First Amendment in this lawsuit.  His Amended Complaint is devoid of anything having to do with the First Amendment.  (*See generally* Amended Complaint).  For this reason, Plaintiff's arguments regarding an alleged violation of his First Amendment rights should be disregarded.

Sheriff Vigil further incorporates fully by reference herein all of his Affirmative Defenses listed in his Answer and Affirmative Defenses to Plaintiff's Amended Complaint.

**C. State Defendants' defenses:** (*A defendant claiming entitlement to qualified immunity must set forth with specificity the basis of the defense.*)

Prior to February 15, 2007, Plaintiff Dale Harapat and his associates have demonstrated at the Fourth Judicial District Attorney's office on several occasions.  During these protests, the only action which the District Attorney's office took was to photograph the protesters and their signs. Apparently, the protesters did not find that the efforts taken to photograph them were objectionable.

On February 15, 2007 at approximately 11:30 a.m., Defendant Tony Valdez spoke with Assistant District Attorney Tom Clayton about taking pictures of Gilbert Bustos, Dale Harapat, and Lee Kittell, who were outside of the District Attorney's office with picket signs.  Clayton advised that Valdez should take pictures of them for their records.  Valdez then obtained his camera and took a picture of Harapat and Kittell from the door of the office building and proceeded towards Bustos, who was on the corner of New Mexico, Ave. and National, Ave.

When Bustos saw Valdez moving down the sidewalk, Bustos started walking fast towards Valdez and told him hold on, hold on.  Before Bustos reached Valdez, Valdez was able to take his picture with his sign.  Bustos then approached Valdez and got right in his face and started yelling at him to get off of his way.  Valdez told Bustos that if he wanted to go by he could, but Valdez was not going to move off of his way.  Throughout this time, Bustos was talking to Valdez in a very rude manner and Valdez thought that possibly Bustos might strike him.

At this time Defendants Sheriff Benjie Vigil, and Sheriff's Deputy Phil Esquibel came outside of the office and asked what was happening. Bustos and Harapat then responded that they had every right to picket in front of the District Attorney's Office.  Sheriff Vigil advised that they could protest as long as they were not obstructing the sidewalk from people coming and going, which they were doing, and that they had to be a certain distance from the building.  Sheriff Vigil then asked that they move on to the gravel area in front of the office.

Bustos, Harapat and Kittell continued yelling, claiming that they did not need to move because they had the right to be there.  Sheriff Vigil then advised that if they did not stop yelling, they would be placed under arrest for public nuisance.  They then responded "then arrest us."

At that point, Sheriff Vigil did not arrest Bustos, Harapat or Kittell.  Instead, Bustos, Harapat and Kittell continued arguing with Valdez and yelling at Sheriff Vigil, Deputy Esquibel and Valdez.  Finally, Bustos', Harapat's and Kittell's disruptive behavior forced Sheriff Vigil to place them under arrest.

As they were taken to the Sheriff's vehicle for transport and to wait on additional units to help with transport, Bustos stated that he has heart conditions and that he might have a heart attack. Bustos then leaned on the Sheriff's vehicle and slowly slid down until he almost sat on the ground and then fell to his back.  Deputy Esquibel and Valdez tried to assist Bustos, and Bustos told Deputy

-8-

Esquibel and Valdez to leave him alone and not to touch him.  Bustos stated that he wanted an ambulance.  After a while, Bustos then rolled on to his front side and then onto his back side and then stood up again with the help of Sheriff Vigil and Valdez.

During this time, Valdez observed Kittell open the Sheriff's vehicle to let out Harapat who was placed in the vehicle by Deputy Esquibel.  Valdez then told Harapat that he was not to exit the vehicle and that he was under arrest.  Kittell and Harapat yelled at Valdez again stating that Harapat needed some air.  Valdez told them that he would open the window for Harapat.  Harapat continued yelling at Valdez saying that he already had a lawsuit on him and to be expecting another.  Valdez then told Harapat again to get into the vehicle and he responded "be expecting a fight if you want me in this vehicle, because I am not going to get in."  Valdez told Harapat that the window was down now and that Harapat had to get back in the vehicle.  Harapat then got back into the vehicle with Valdez's assistance.

Las Vegas City Police sent two units to help transport all three subjects to the San Miguel County Detention Center.  At the Detention Center, the officers walked Bustos, Harapat and Kittell into the facility.  Sheriff Vigil started to do the booking and called the nurse on duty to check Bustos because of his complaining of "heart attacks."  During the booking, all three men were being very loud and uncooperative by not giving an I.D. or answering any questions about their addresses, etc.  Norma Jo Martinez, the nurse, was checking Bustos, who was lying on the floor again.  At that time, the ambulance crew arrived and attended to Bustos.

While Sheriff Vigil was taking Kittell's belongings, Nurse Martinez saw a small container on a chain and she asked Kittell if it was nitroglycerin.  Kittell stated "Yes!"  Bustos slowly laid down on the floor and put his hands on his chest.  Nurse Martinez then checked Bustos and Kittell said that he was fine. Nurse Martinez told Sheriff Vigil that he should take all three subjects to the

hospital for medical release for incarceration.  Nurse Martinez told Sheriff Vigil that Kittell had "powder substance, not pills"in the small container.  Bustos was taken by ambulance and Kittell and Harapat were taken by Deputies L. Mata and B. Villanueva.

Sheriff Vigil then went back to his office and prepared the complaints.  Sheriff Vigil was called by Deputy Mata, who informed him that the hospital was going to admit Bustos and Kittell for observation.  Sheriff Vigil then called Judge Najar to ask him if Bustos and Kittell could be released on their own because the Sheriff's office did not have the man power to do security on these subjects.  Judge Najar agreed.  Sheriff Vigil then went to the hospital and gave Bustos and Kittell a copy of the Criminal Complaint and told them that they needed to report to the Judge's office on Monday the 19th.  Both subjects told Sheriff Vigil "Okay" and that Judge Najar already advised them to go see him on Monday.  Harapat was released from the hospital and was taken back to the Detention Center, where he was lodged.

Later that evening, Sheriff Vigil was called by the Las Vegas City Police Department and was advised that Bustos and Kittell refused to stay in the hospital and left the premises.  Sheriff Vigil put the signs that the subjects were carrying in his office to return them.  They were not taken as evidence.  One of the signs that Bustos was carrying was very vulgar, stating  "D.A.'s suspected semen seed swallers sissy."

With regard to the criminal prosecution, Mr. Flores concluded that his office had a conflict. Accordingly, Mr. Flores asked the District Attorney's office in the Ninth Judicial District to prosecute the case against Harapat.  No attorney from the Fourth Judicial District Attorney's office was involved in Harapat's prosecution.  It is possible that an assistant district attorney with the Ninth Judicial District Attorney's office told Harapat that he would be subject to an action for protective

-10-

order or re-arrested if he continued to engage in demonstrations outside the District Attorney's office.

## IV.  FACTUAL CONTENTIONS UNDERLYING CLAIMS/DEFENSES

**A.  Stipulated Factual Contentions.**

The parties agree to the following facts listed separately below for purposes of trial:

1. At all times material to Plaintiff's Complaint, Defendants Esquibel, Valdez, and Vigil was acting within the scope of his duties as a public employee and under color of state law.

2. Defendant Richard Flores was, at all times material to this complaint, the District Attorney for the Fourth Judicial District.  Defendant Flores is being sued in his official capacity.

3. Defendant Vigil filed criminal charges against Plaintiff under the laws of the State of New Mexico for Public Nuisance, Disorderly Conduct, and Unlawful Assembly.

4. The criminal charges Defendant Vigil filed against Plaintiff were dismissed.

**B.  Contested Material Facts.**

1. Plaintiff's Contentions:

Plaintiff publicly voiced opposition against the District Attorney's Office for the Fourth Judicial District in Las Vegas, New Mexico during 2006 based on what he believed to be a pattern of selective prosecution, by placing a television advertisement with a local television station, writing a open letter to Defendant Flores, and peaceably demonstrating on the sidewalk in front of District Attorney's Office.  During one of these demonstrations, on or about November 19, 2006, an Assistant District Attorney employed by Defendant Flores confronted the protesters, including Plaintiff, and made critical remarks intended to hinder or disrupt the demonstration.

On or about February 15, 2007, Plaintiff and others were again peaceably demonstrating on the sidewalk in front of the District Attorney's Office.  During that demonstration, Defendant Valdez went outside to photograph and intimidate the demonstrators, including but not limited to Plaintiff. Defendant Esquibel went outside to assist Defendant Valdez, and they both confronted the demonstrators for the purpose of impeding their protest.  Defendant Vigil arrived outside a short while later, told the demonstrators they had to be at least 500 feet from the building and ordered them across the street.  Defendants Vigil, Esquibel, and Valdez then arrested Plaintiff and other demonstrators at the scene.

Defendant Vigil later filed criminal charges against Plaintiff under the laws of the State of New Mexico for Public Nuisance, Disorderly Conduct, and Unlawful Assembly.  The individual Defendants made compelling admissions during their interviews in the criminal case that tend to demonstrate Plaintiff and the other two demonstrators were unlawfully arrested.  The criminal charges against Plaintiff were dismissed by the prosecutor for an obvious lack of evidence, although the prosecutor stated he would recommend to the District Attorney's Office to get a restraining order if he went near there again.  As proximate a result of the foregoing, Plaintiff has suffered injuries and damages including but not limited to physical injuries, pain and suffering, emotional distress, unlawful incarceration and lost freedom, lost income, and attorney's fees for representation in the criminal case wrongfully brought against him.

2.      Defendant Sherif Vigil's contentions:

On February 15, 2007, Defendant Vigil was inside the Fourth Judicial District Attorney's Office.  A legal assistant at the District Attorney's Office informed Defendant Vigil that there was a disturbance taking place outside the office.  Defendant Vigil went outdoors and saw three subjects (Plaintiff, Lee Kittell and Gilbert Bustos) yelling at Defendants Tony Valdez and Phil Esquibel.

-12-

Prior to calling for Sheriff Vigil, that same legal assistant had observed protester Gilbert Bustos in district attorney employee Tony Valdez's face, with the two yelling at one another.  Prior to Sheriff Vigil going outside, another district attorney employee, Evelyn Marquez, saw Plaintiff and Valdez "in each other's faces" (within inches), yelling at one another.  Even Plaintiff's co-protester and friend, Lee Kittell, testified that Valdez and Mr. Bustos were in a "nose to nose shouting match."  Sheriff Vigil had no inkling what was going on until he was told, "They need you outside."  When he went outside, he observed the protesters yelling at Valdez and co-employee Phil Esquibel.  Sheriff Vigil attempted to defuse this serious situation, but received no cooperation from Plaintiff and his fellow protesters.  Thus, a serious and potentially violent confrontation was taking place between the protesters and two district attorney employees.

Defendant Vigil approached the three subjects and told them to lower their voices.  Mr. Bustos told Defendant Vigil in a loud voice that Vigil was "violating his constitutional rights."  Defendant Vigil informed the three subjects that they could "stay and do whatever they were doing," but that they needed to stand further away from the District Attorney's Office building and the sidewalk in front of the building, so that the public would have access to and from the building.  All three men ignored Defendant Vigil and became argumentative with him.  Defendant Vigil then advised the three men that if they did not move or lower their voices, Vigil would arrest them.  The men told Defendant Vigil to arrest them.  Defendant Vigil then handcuffed Plaintiff, and escorted and placed him inside Vigil's vehicle.

Plaintiff, Mr. Kittel and Mr. Bustos were then transported to the San Miguel County Detention Center (SMCDC).  All three men were loud and uncooperative throughout the booking process.  Plaintiff and the other men began complaining of "heart attacks" at the SMCDC.  SMCDC nurse Norma Jo Martinez began checking on the three men.  She told Defendant Vigil that all three

subjects should be taken to the hospital for medical release. Mr. Bustos was transported by ambulance, and Plaintiff and Mr. Kittell were taken by Sheriff's Deputies Mata and Villanueva. Subsequently, Plaintiff was released from the hospital and taken back to SMCDC.

Defendant Sheriff Vigil prepared and filed criminal complaints against Plaintiff, Mr. Kittel and Mr. Bustos. Plaintiff was charged in state magistrate court with public nuisance, disorderly conduct and unlawful assembly. The charges were eventually dismissed without prejudice by the District Attorney from the Ninth Judicial District Court, for unknown reasons.

       3.    State Defendants' contentions:

       a.    Whether Valdez and Esquibel violated Harapat's Fourth Amendment and Fourteenth Amendment right against unlawful arrest;

       b.    Whether Valdez and Esquibel violated Harapat's Fourth Amendment and Fourteenth Amendment right against the use of excessive force;

       c.    Whether Valdez and Esquibel violated Harapat's First Amendment and Fourteenth Amendment right against unlawful retaliation;

       d.    Whether Flores, acting in his official capacity, violated Harapat's First Amendment and Fourteenth Amendment rights warranting the issuance of a permanent injunction; and

       e.    Whether Valdez and Esquibel committed the state law tort of assault, battery, false arrest, and false imprisonment against Harapat.

## V. APPLICABLE LAW

**A. Do the parties agree which law controls the action?**

    __X__ Yes   ___ No

**If yes, identify the applicable law.**

42 U.S.C. § 1983, the First and Fourth Amendments to the United States Constitution, the New Mexico Tort Claims Act, NMSA 1978, § 41-4-1 *et seq.*, and case law interpreting these provisions.

**If no, identify the dispute and set forth each party's position regarding the applicable law.**

1. Plaintiff:

2. Defendant Sheriff Vigil:

3. State Defendants:

## VI.  UNCONTESTED ISSUES OF LAW

1.   None other than stipulations set forth above.

## VII.  CONTESTED ISSUES OF LAW

**Identify the specific issues of law which are contested.**

1.   Plaintiff identifies the following issues of law: Whether any of the individual Defendants is entitled to qualified immunity on any of Plaintiff's section 1983 claims.  Whether Plaintiff is entitled to injunctive relief.  Any contention of law denoted as a contention of fact is so intended, and incorporated herein.

2.   Defendant Sheriff Vigil identifies the following issues of law: Whether Sheriff Vigil is entitled to qualified immunity; and whether Plaintiff's state tort claims against Sheriff Vigil are subject to summary judgment and/or dismissal.

3.   The State Defendants identify the following issues of law:  Valdez and Esquibel raised qualified immunity in their answer.  Accordingly, Valdez and Esquibel contend that Harapat failed to bring claims against them which show that they violated Harapat's clearly established rights.

## VIII.  MOTIONS

**A.  Pending Motions (indicate the date filed):**

       1.      Plaintiff: Plaintiff's Motion to Lift Stay of Discovery against Defendant Benjie Vigil, filed September 1, 2009 (Doc. 62).

       2.      Defendant Sherif Vigil: N/A

       3.      State Defendants: N/A

**B.  Motions which may be filed:**

       1.      Plaintiff: Motion(s) in limine, as necessary and appropriate; motion(s) for directed verdict or judgment as a matter of law as necessary and appropriate; motion to tax costs as appropriate.

       2.      Defendant Sherif Vigil: Motions in Limine as needed; Motion for Costs and Fees if applicable.

       3.      State Defendants: motions in limine; motion for judgment as a matter of law.

       Motions in limine shall be filed no later than January 4, 2010.

## IX.  DISCOVERY

**A.  Has discovery been completed?**     \_\_\_\_ Yes    **X**  No

  **B.  Are there any discovery matters of which the Court should be aware?**  Yes.  Plaintiff has not had an opportunity to take any discovery against Defendant Sherif Vigil.  *See* Pl.'s Mot. Lift Stay (Doc. 62).

## X.  ANTICIPATED WITNESSES

    *Each party is under a continuing duty to supplement this list and the description of anticipated testimony.  This does not, however, apply to a rebuttal witness.  Indicate if the witness will testify in person or by deposition and include a brief description of the anticipated testimony.*

*If the testimony is by deposition, identify the deposition by page number and line number.  No witnesses except rebuttal witnesses whose testimony cannot be anticipated, will be permitted to testify unless the name of the witness is furnished to the Court and opposing counsel no later than thirty (30) days prior to the time set for trial.  Any exceptions thereto must be upon order of the Court for good cause shown.*

**A.  Plaintiff's Witnesses:**

    1.    Plaintiff will call or have available at trial the following witnesses:

        a.    *Dale Harapat.*  Mr. Harapat will testify to the events forming the basis of his complaint and about his damages.

        b.    *Lee Kittell.*  Mr. Kittell will testify about the incidents of February 15, 2007, and his personal observations of Plaintiff's injuries and damages.

    2.    Plaintiff may call the following witnesses:

        a.    *Defendant Benjie Vigil.*  Defendant Vigil may be called to testify regarding his involvement in the events of February 15, 2007, his training and experience as a law enforcement officer, other misconduct or allegations of misconduct against him, his prior recorded statements, and other matters relevant to Plaintiff's complaint yet to be determined.

        b.    *Defendant Tony Valdez.*  Defendant Valdez may be called to testify regarding his involvement in the incidents and events forming the basis of Plaintiff's complaint, his training and experience as a law enforcement officer, his prior recorded statements, and other matters relevant to Plaintiff's complaint yet to be determined.

c.      *Defendant Phil Esquibel.*   Defendant Esquibel may be called to testify regarding his involvement in the incidents and events forming the basis of Plaintiff's complaint, his training and experience as a law enforcement officer, his prior recorded statements, and other matters relevant to Plaintiff's complaint yet to be determined.

d.      *Defendant Richard Flores.*   Defendant Flores may be called to testify regarding his knowledge of the incidents and events forming the basis of Plaintiff's complaint, his office's actions in regard to the demonstrations described in Plaintiff's Complaint, the prosecution of Plaintiff resulting from his role in the February 15, 2007 demonstration, and other matters relevant to Plaintiff's complaint yet to be determined.

e.      *Matthew Chandler.*   Mr. Chandler may be called to testify about any and all matters related to his prosecution of Plaintiff in *State v. Dale Harapat*, No. M-48-MR-2007-132-02, including but not limited to his communications with any of the named Defendants.

f.      *Dolores Turner.*   Ms. Turner may be called to testify about her observations of protest activities outside the District Attorney's Office, including but not limited to the events of February 15, 2007.

g.      *Evelyn Marquez.*   Ms. Marquez may be called to testify about her observations  of protest activities outside the District Attorney's Office, including but not limited to the events of February 15, 2007.

h.     *Wilma Brown.*   Attorney Brown may be called to testify concerning her interview of Defendant Sherif Vigil and others in the course of her representation of Lee Kittell.

I.     *Billing Records Custodian, Alan Maestas Law Office, P.C.*   A records custodian may be called to testify concerning the firm's billings for legal representation of Plaintiff in the underlying criminal case.

j.     *Billing Records Custodian, Alta Vista Regional Hospital.*   A records custodian may be called to testify concerning medical bills incurred by Plaintiff as a result of the injuries Defendants caused him.

k.     *Any other witnesses identified or called by Defendant or disclosed during the discovery process.*

l.     *Any necessary rebuttal witnesses whose testimony cannot be anticipated at this time.*

**B. Defendant Sherif Vigil's Witnesses:**

1.     Defendant Sherif Vigil will call or have available at trial the following witnesses:

a.     *Benjie Vigil.*   Defendant Sheriff Vigil will testify regarding Plaintiff's allegations and the events underlying Plaintiff's Amended Complaint.

b.     *Phil Esquibel.*  Defendant Esquibel is expected to testify regarding Plaintiff's allegations and the events underlying Plaintiff's Amended Complaint.

c.     *Tony Valdez.*  Defendant Valdez is expected to testify regarding Plaintiff's allegations and the events underlying Plaintiff's Amended Complaint.

d.     Any and all witnesses identified by Plaintiff and any other party to this litigation.

e.     Any and all witnesses whose identity becomes known during the course of litigation.

f.     Any and all witnesses called solely for rebuttal purposes.

2.     Defendant Sheriff Vigil may call the following witnesses:

a.     *Dale Harapat, Plaintiff.*  Plaintiff is expected to testify regarding his claims of liability and for damages.

b.     *Richard Flores, Fourth Judicial District Attorney.*  Defendant Flores may testify regarding Plaintiff's allegations and the events underlying Plaintiff's Amended Complaint.

c.     *Norma Jo Martinez, RN.*  Ms. Martinez may testify regarding events underlying Plaintiff's Amended Complaint that took place at the San Miguel County Detention Center.

d.     *Sheriff's Deputies Mata and Villanueva.*  Deputies Mata and Villanueva may testify regarding events underlying Plaintiff's Complaint taking place at the San Miguel County Detention Center and the hospital.

e.     *Dr. Diana Calderon, Psychologist.* Dr. Calderon may be called to testify about Plaintiff's credibility related to Plaintiff's domestic disputes involving his children and his former spouse.

f.     *Dolores Turner.*  Ms. Turner may testify consistent with her deposition testimony.

g.     *Evelyn Marquez.*  Ms. Marquez may testify consistent with her deposition testimony.

-20-

h. *Leroy Garcia*.  Mr. Garcia may testify consistent with his deposition testimony.

I. *Veronique Harapat-Clarke*.  Ms. Clarke may be called to testify about Plaintiff's credibility related to Plaintiff's domestic disputes involving his children and his former spouse, and related court proceedings.

j. Any and all witnesses identified by Plaintiff.

k. Any and all witnesses called solely for rebuttal purposes.

## C. State Defendants' Witnesses

1. State Defendants will call or have available at trial the following witnesses:

   a. *Defendant Tony Valdez.*  Mr. Valdez will testify regarding his involvement in the incidents and events forming the basis of Plaintiff's complaint, his training and experience as a law enforcement officer.

   c. *Defendant Phil Esquibel.*  Mr. Esquibel will testify regarding his involvement in the incidents and events forming the basis of Plaintiff's complaint, his training and experience as a law enforcement officer.

   d. *Defendant Richard Flores.*  Mr. Flores may testify regarding his knowledge of the incidents and events forming the basis of Plaintiff's complaint, his office's actions in regard to the demonstrations described in Plaintiff's Complaint, the prosecution of Plaintiff resulting from his role in the February 15, 2007 demonstration.

2. State Defendants may call the following witnesses:

   a. *Dale Harapat.*  Mr. Harapat will testify to the events forming the basis of his complaint and about his damages.

-21-

b.      *Lee Kittell.*  Mr. Kittell will testify about the February 15, 2007 incident.

c.      *Benjie Vigil.*  Defendant Sheriff Vigil will testify about the February 15, 2007 incident.

d.      *Norma Jo Martinez, RN.*  Ms. Martinez  will testify about the February 15, 2007 incident and the events which took place at the San Miguel County Detention Center.

e.      *Dr. Diana Calderon, Psychologist.* Dr. Calderon will testify about Plaintiff's credibility related to Plaintiff's domestic disputes involving his children and his former spouse.

f.      *Dolores Turner.*  Ms. Turner will testify about the February 15, 2007 incident.

g.      *Evelyn Marquez.*  Ms. Marquez  will testify about the February 15, 2007 incident.

h.      *Leroy Garcia.* Mr. Garcia  will testify about the February 15, 2007 incident.

I.      *Veronique Harapat-Clarke.*  Ms. Clarke may be called to testify about Plaintiff's credibility related to Plaintiff's domestic disputes involving his children and his former spouse, and related court proceedings.

j.      *Matthew Chandler.*  Mr. Chandler will testify about any and all matters related to his prosecution of Plaintiff in  *State v. Dale Harapat*, No. M-48-MR-2007-132-02, including but not limited to his communications with any of the named Defendants

k.      Any and all witnesses identified by Plaintiff and any other party to this litigation.

-22-

l.      Any and all witnesses whose identity becomes known during the course of litigation.

m.      Any and all witnesses called solely for rebuttal purposes.

## XI. TRIAL PREPARATION

**A.  Exhibits.**

The parties must confer over all trial exhibits.  This does not apply to rebuttal exhibits that cannot be anticipated before trial.  The parties must file an original of the parties' "consolidated exhibit list identifying all exhibits that the parties have stipulated are admissible" and a "consolidated exhibit list identifying all exhibits the parties have stipulated to be authentic, but to which there are other objections" no later than January 15, 2010.  Any exhibit that a party wishes to inspect/review must be done so in writing no later than January 19, 2010, and, must be available for inspection/review no later than January 20, 2010; objections to any exhibit must be filed no later than noon on January 21, 2010.

For those exhibits on which a stipulation could not be reached, the offering party must file a separate "contested exhibit list" no later than _____ calendar days before trial.  An original of each party's contested exhibit list must be filed on the date identified in the preceding paragraph.

All exhibits must be marked before trial.  Exhibits must be marked numerically by the Plaintiff and with letters by the Defendants.  The identification number or letter will remain the same whether the exhibit is admitted or not.

**B.  Witness Lists.**

The original of a party's witness list must be filed with the Clerk and served on all parties by January 11, 2010 and any objections shall be filed on January 14, 2010.  Indicate whether the witness is testifying by deposition or in person.  Objections to use of deposition testimony are due

as soon as reasonably possible after the service of the witness list.  The objecting party must highlight those portions of the requested deposition testimony to which the party objects.  Plaintiff must use a yellow highlighter and defendant must use a blue highlighter.  The parties must confer about any disputes and, if unable to resolve any differences, must notify the Court in writing as soon as possible.

**C.  Voir Dire.**

    **1.**  If allowed, do the parties wish to participate in *voir dire*?

        Plaintiff      **X**  Yes    \_\_\_\_\_  No

        Defendant     **X**  Yes    \_\_\_\_\_  No

        Other Party   \_\_\_\_\_  Yes    \_\_\_\_\_  No

    **2.**  Each party wishing to participate in *voir dire* must serve on all parties and file with the Clerk, a pleading entitled "Proposed Voir Dire Questions."  The pleading must identify the specific areas about which the party wishes to inquire and must set forth proposed *voir dire* questions.  This request must be filed by January 15, 2010 and any objections must be filed by January 19, 2010..

**D.  Jury Instructions and Verdict.**

    **1.  In General.**  The parties must confer about proposed jury instructions.  The instructions that the parties must submit to the Court will be those which set forth the elements and definitions of the claims or charges, and the elements and any definitions of any defenses, as well as any and all other instructions that the parties want the Court to give.

    **2.  Sources for Instructions.**  If pattern instructions are followed by the judge, the judge will indicate at the pretrial conference his or her preference for the source of instruction.

**3.  Submission of Proposed Instructions.**  The parties shall submit the elements of the causes of action no later than January 11, 2010.  The parties must submit one mutually approved set of jury instructions no later than January 20, 2010.  For those instructions the parties were unable to agree upon, each party must submit its own proposed instructions at the same time as submission of the mutually agreed instructions.  The Plaintiff shall provide his proposed instructions to the Defendants no later than January 15, 2010 and the Defendants shall notify Plaintiff's counsel of those instructions for which there is agreement to no later than January 20, 2010.

**4.  Form of Instructions.**

>  **a.**  Submit sets of double-spaced instructions as follows:
>
> 1 set with citations and numbered accordingly, (Fig 1), which will be filed.
>
> **b.**  Submit no more than one instruction to a page.
>
> **c.**  All deviations from pattern instructions must be identified as "modified" in the citation and the modification must be highlighted in the body of the instruction.
>
> **d.**  Submit a cover sheet on all sets of instructions.

**5.  Deadlines for Submitting Instructions.**

>  **a.**  Instructions shall be filed no later than January 20, 2010.
>
> **b.**  Supplemental unanticipated jury instructions may be submitted at trial.

**E.  Statement of Case.**

The parties must confer and submit an agreed statement of the case to the Court that will be read to the jury panel during jury selection.  The Plaintiff shall provide a proposed statement of the case to the Defendants by January 15, 2010 and the Defendant's shall provide a response to the Plaintiff by January 19, 2010.  The statement must be submitted to the Court on January 20, 2010.

**F. Submissions for Bench Trials.**

    **1.** The parties must submit one mutually approved set of proposed findings of fact and conclusions of law no later than 10 days after trial. For those findings of fact and conclusions of law the parties were unable to agree upon, each party must submit its own proposed findings of fact and conclusions of law at the same time as submission of the mutually approved set.

## XII.  OTHER MATTERS

**A. Settlement Possibilities.**

    **1.** The possibility of settlement in this case is considered:

    __**X**__ Poor _____ Fair _____ Good _____ Excellent ____ Unknown

    **2.** Do the parties have a settlement conference set with the assigned Magistrate Judge?

        ____ Yes __**X**__ No   If yes, when? _____.

If settlement conference has already been held, indicate approximate date.  __Has not been held.__

    Would a follow-up settlement conference be beneficial? ___ Yes ___ No ___ Unknown

    **3.** Does either party wish to explore any alternatives for dispute resolution such as mediation or a summary jury trial? *No.* If yes, please identify. _____ If no, explain why not. __The parties have not yet attended a settlement conference.  Cannot determine whether these alternatives for dispute resolution would be effective.__

**B. Length of Trial and Trial Setting.**

    **1.** This action is a _____ Bench trial __**X**__ Jury Trial _____ Both

    **2.** The case is set for trial on___ __January 25, 2010__ ___. If there is no setting, the parties estimate they will be ready for trial by_____.

    **3.** The estimated length of trial is __3__ days.

## XIII.  EXCEPTIONS

Plaintiff takes exception to Defendant Vigil's identification of Dr. Diana Calderon and *Veronique Harapat-Clarke*, Plaintiff's ex-wife, as witnesses in this matter as they have not previously been so identified and any testimony they have to offer would be inadmissible under Rules of Evidence 402, 403, 404(b), 608, and possibly 501 and state and federal law regarding the confidentiality of medical, psychological and/or therapy patient information.

## XIV.  MODIFICATIONS-INTERPRETATION

The Pretrial Order when entered will control the course of trial and may only be amended *sua sponte* by the Court or by consent of the parties and Court approval.  The pleadings will be deemed merged herein.

The foregoing proposed Pretrial Order (prior to execution by the Court) is hereby approved this 12th day of January, 2010.

Attorneys for Plaintiff:

*Approved 12/17/09*
ADAM S. BAKER
BAKER LAW OFFICE, LLC
P.O. Box 3572
Taos, New Mexico 87571
(505) 231-8984
Fax: (575) 751-0704

Alan Maestas and/or Kimberly Alderman
Alan Maestas Law Office, P.C.
224 Cruz Alta Rd., Ste. 224
Taos, New Mexico 87571
(575) 737-0509

Attorney for Defendant Benjie Vigil:


*Approved 12/17/09*
Carlos M. Quiñones, Esq.
QUIÑONES LAW FIRM
1532 B Paseo de Peralta
Santa Fe, NM  87501
(505) 992-1515
(505) 992-1714 (fax)
ROBLES RAEL & ANAYA, P.C.



/s/ Luis Robles
Luis Robles
Robles, Rael, & Anaya, P.C.
500 Marquette N.W., Suite 700
Albuquerque, NM 87102
(505) 242-2228
(505)242-1106 FAX



UNITED STATES DISTRICT JUDGE